IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KERRY J.,[1]

       Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

Civ. No. 3:18-cv-01152-MC

OPINION AND ORDER

MCSHANE, Judge:

On December 6, 2013, Plaintiff filed an application for benefits, alleging disability as of February 1, 2010. Tr. 15.[2] Following a December 21, 2016 hearing, the administrative law judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act. Tr. 23. Plaintiff argues the ALJ erred in (1) rejecting the medical evidence and (2) formulating a residual functional capacity ("RFC") that is not supported by substantial evidence. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Plaintiff alleged disability as of February 1, 2010. In a January 2014 function report, Plaintiff stated, "I have no strength or coordination in hands fingers or arms, going out of joint all the time curling up numb, going to sleep can't hardly move them! Back + neck are so bad if I try to do my work I will be paralyzed in hospital." Tr. 163. Plaintiff alleged he had problems dressing because he "can't hardly move arms or hands." Tr. 165.

At the December 2016 hearing, the ALJ asked the Plaintiff what happened in February of 2010—Plaintiff's alleged onset date—that made it impossible to continue working:

> A: Well, I—my arms had just been so bad off since about '95 when I think they started having a problem. But I worked till 2010 and I just literally couldn't do it anymore at all. I just—
>
> Q: What kept you from not doing it anymore? What?
>
> A: Well, the—severe tendonitis in my arms. From my shoulders to my fingertips. Along with the neck and the back and—you know, knees and legs.

Tr. 35.

Plaintiff explained he worked in the automobile painting industry, and it took a heavy toll on his body. In response to the ALJ's question asking if Plaintiff considered looking for less taxing work, Plaintiff stated, "I—no, I didn't really. I didn't know anything else I could do other than doing the—in the automobile trade." Tr. 36. Plaintiff stated "the severe tendonitis is the worst of it . . . [from m]y shoulders to the fingertips." Tr. 36-37. Plaintiff stated his pain was so bad that he "can't hardly sleep." Tr. 37. The pain was 24 hours-a-day, and Plaintiff could not even tie his shoes. Tr. 38.

In finding Plaintiff less-than fully credible as to the extent of his limitations, a finding Plaintiff does not challenge here, the ALJ noted that Plaintiff only rarely sought treatment:

> There is no evidence of evaluation or treatment of the claimant's allegedly disabling medical conditions from around the time of the alleged onset of disability [in February 2010]. In fact, there is no evidence of any treatment for the claimant's alleged symptoms until 2014. The claimant saw a chiropractor [for] treatments for arm pain from January-April 2014, and again in August of that year. The claimant indicated continued improvement with this treatment in April. He did not seek additional treatment from a chiropractor after August 2014. More significantly, he did not seek evaluation or treatment of his allegedly disabling medical conditions from other healthcare providers. The limited treatment history is inconsistent with the alleged frequency, intensity, and persistence of pain and other symptoms from the claimant's physical impairments. The limited treatment history also suggests that the claimant's symptoms are not a level that would prevent him from sustaining fulltime work at the medium exertional level, as accounted for in the residual functional capacity.

Tr. 20 [internal citations omitted].

The above findings, unchallenged by Plaintiff, are relevant to Plaintiff's argument that the ALJ erred in rejecting the lone medical opinions in the record. In April 2014, Physician Nicholas Branting, MD, examined the Plaintiff. Tr. 198-202. As Plaintiff never saw a treating physician for his impairments, Dr. Branting's opinion (and the state agency doctors who based their own opinions largely on Dr. Branting's opinion), based on one 35 minute examination of Plaintiff, is the lone medical opinion in this case.[3] Dr. Branting limited Plaintiff to lifting 10 pounds frequently and 20 pounds occasionally; i.e., light work. Plaintiff argues the ALJ erred in rejecting that portion of Dr. Branting's opinion in finding Plaintiff could perform medium work. Dr. Branting based the lifting limitation on Plaintiff's allegation of bilateral shoulder pain. As to that impairment, Dr. Branting noted:

> 1. Bilateral shoulder pain: The claimant has worked in auto body work since he was 16, and in 1995-1996 there was a 2 ½ month span where he says he completely over-did it at work, and after that time he was unable to hold his tools anymore. he had severe bilateral hand pain and shoulder and elbow pain. He went to a chiropractor who specialized in tendon treatment and was treated for tendinitis. He kept working for several years after that, until 2-3 years ago, when

---

[3] In addition to Dr. Branting's examination (and the opinions of the state physicians), the medical record consists: x-rays of Plaintiff's spine and wrist, 2014 chiropractic treatment records, and two treating records unrelated to the impairments at issue.

> he finally stopped working. He describes his pain as a severe numbness throughout his entire hand, both median and ulnar nerve distribution. It is pain and numbness. It is worse with activity and gripping things. It is worse when trying to grip a tool, a doorknob, a bicycle handle. It is better with rest. He describes it as a constant 5/10 pain with intermittent 8/10 pain. It is a sharp and shooting pain with constant dull ache underlying pain.

Tr. 198.

Dr. Branting diagnosed Plaintiff with, as relevant here, "Bilateral upper extremity pain, per claimant: The claimant likely has bilateral carpal tunnel syndrome and likely has some mild degenerative joint disease of the bilateral glenohumeral joints." Tr. 202. Plaintiff concedes that the above is not a valid diagnosis under the Act. Reply, 2 ("Further, while Dr. Branting did not specifically say Plaintiff is diagnosed with bilateral carpal tunnel syndrome or degenerative joint disease, he did note that his findings that account for those determinations would lead to the limitations proffered."). Dr. Branting explained the basis for his limitation to light work:

> Maximum lifting and carrying capacity is 20 pounds occasionally and 10 pounds frequently. Justification for limitation is bilateral carpal tunnel syndrome and bilateral glenohumeral degenerative joint disease.

Tr. 202.

The ALJ did not err in finding Plaintiff's alleged impairments of carpal tunnel syndrome and shoulder pain were not medically determinable impairments. As noted above, and as Plaintiff concedes, Dr. Branting only noted "likely" carpal tunnel syndrome and shoulder pain "per claimant." Tr. 202. The ALJ noted Plaintiff lacked any relevant diagnosis, and lacked the required laboratory findings required under the regulations. Tr. 17-18. The ALJ recognized that although Plaintiff's friends and acquaintances concluded Plaintiff suffered from carpal tunnel syndrome, the regulations required more. Tr. 18. And although Plaintiff exhibited some symptoms consistent with carpal tunnel syndrome:

> this condition has not been verified with a nerve conduction study (1F/4). Moreover, the claimant has not sought evaluation or treatment for CTS from a

> healthcare provider, which is inconsistent with his allegations of significant symptoms and limitations in the use of his hands. Accordingly, this alleged condition is a nonmedically determinable impairment. However, the residual functional capacity does limit handling, fingering, and feeling for a frequent level, which is a reasonable restriction for CTS given the lack of evaluation and treatment by healthcare providers.

Tr. 18.

As for Plaintiff's shoulder pain, the ALJ again noted that this ailment lacked a medically determinable diagnosis (but recognized Dr. Branting believed it was "likely" that Plaintiff suffered from degenerative joint disease in the shoulders). Tr. 18. The ALJ noted that even though Plaintiff lacked a medically determinable impairment, the RFC limitation of not more than frequent overhead reaching reflected the decreased range of motion Plaintiff exhibited upon the sole examination in the record. Tr. 18.

Considering the lack of relevant medically determinable impairments, the ALJ gave limited weight to Dr. Branting's opinion, as well as the state agency physicians who based their opinions off Dr. Branting's opinion. Tr. 21. The ALJ did not err in weighing the medical opinions. The ALJ noted that Dr. Branting's limitation of six hours walking was inconsistent with the (limited) record. The ALJ noted the limitation was inconsistent with Dr. Branting's observation that Plaintiff had no difficulty ambulating during the examination, and with Plaintiff's own statement that he could walk "constantly" without needing to stop to rest. Tr. 168. Next, the ALJ concluded that all of the medical opinions:

> appear to attribute limitations to impairments that are not medically determinable, such the alleged shoulder disorder. Moreover, the opinions from Dr. Branting, [and the state agency physicians] are not supported by the relatively weak objective evidence discussed throughout this decision, and are inconsistent with the lack of any significant evaluation and treatment of the alleged impairments by healthcare providers.

Tr. 21.

The regulations provide that, "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). Additionally, when constructing a RFC, the ALJ must base the RFC "on all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1). Finally, "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, available at 2019 WL 374184 at *1.

Given the above, the ALJ did not err in giving little weight to the opinions of Dr. Branting or the agency physicians that Plaintiff was limited to light work. The ALJ stated:

> The x-rays and examination report from Dr. Branting partially support the claimant's allegations of aches and pains, but the objective evidence is fairly weak, and does not show that the claimant would be unable to perform work at the medium exertional level.
>
> More significantly, the claimant does not appear to have sought any additional evaluation or treatment of his physical impairments after Dr. Branting's examination, other than the one August 2014 visit to a chiropractor. Thus, it appears that the claimant has had no treatment for his back or left wrist pain in more than two years, which is inconsistent with his allegations of disabling physical symptoms and limitations. When the limited treatment history is considered with the relatively weak objective evidence, it seems reasonable to infer that the claimant could sustain work activities at the medium exertional level.

Tr. 20-21.

The ALJ reasonably concluded that the lack of any treatment from an accepted medical source during the six years at issue indicated Plaintiff was able to perform medium work with no more than frequent overhead reaching, and no more than frequent handling, fingering, or feeling. Tr. 19.

/ / / /

/ / / /

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 21st day of November, 2019.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge